**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**SARAH FELLS**                                                          **PLAINTIFF**

**v.**                          **No. 4:09CV00907 SWW**

**STEWART TITLE GUARANTY COMPANY**                          **DEFENDANT**


**RECOMMENDED DISPOSITION**

**I.     Procedures for Filing Objections:**

The following recommended disposition has been sent to United States District

Judge Susan Webber Wright.  Any party may serve and file written objections to this

recommendation.  Objections should be specific and should include the factual or legal

basis for the objection.  If the objection is to a factual finding, specifically identify that

finding and the evidence that supports your objection.

Your objections must be received in the office of the United States District Court

Clerk no later than fourteen (14) days from the date of the Recommended Disposition.

Failure to file timely objections may result in a waiver of the right to appeal questions of

fact.

**II.     Background:**

Plaintiff Sarah Fells was forced to sell her home in east Little Rock as a result of a

condemnation action filed by the Little Rock Airport Commission.  (#8 at p. 1)  On or

around October 26, 2005, Randall and Demita Mitchell ("the Mitchells") agreed to sell

Plaintiff rental property they owned at 1523 Wolfe Street, Little Rock, Arkansas ("the Wolfe Street Property").  (#8 at p. 1)

Stewart Title Company, Arkansas Division, formerly Stewart Title of Arkansas, Inc. ("STAR"), acted as closing agent for the transaction, which included performing a title search. (#8 at p. 1)  The Mitchells provided STAR a copy of the offer to purchase the real estate, which included the following legal description: "Lot 6, Block 23, Centennial Addition to the City of Little Rock, Pulaski County, Arkansas" ("the Property").  (#8 at p. 1)

Defendant Stewart Title Guaranty Company ("Stewart Title") issued Owner's Policy No. 0-9701-1610647 ("the Title Policy"), on the Property, as described in the public records: "the East 50 Feet and the West 90 Feet of Lot 6, Block 23 Centennial Addition to the City of Little Rock, Pulaski County, Arkansas."  (#8 at pp. 1-2)

The Property, as described in the public records, actually comprises the Wolfe Street Property and another rental property owned by the Mitchells located at 1726 West 16th Street, Little Rock, Arkansas ("the West 16th Street Property").  (#8 at p. 2) Consequently, the Warranty Deed the Mitchells delivered to the Plaintiff conveyed both the Wolfe Street Property and the West 16th Street Property.  (#8 at p. 2)

More than a year after the transaction, the Mitchells and Plaintiff became aware that both the Wolfe Street Property and the West 16th Street Property had been conveyed in the transaction.  A relative of the Plaintiff's spoke with Darlene Jones, President of

STAR, to inquire about the transaction.  (#7-5 at p. 2)  Ms. Jones was also contacted by an attorney who represented Plaintiff.  (#7-5 at p. 1)  Ms. Jones advised the attorney to contact Stewart Title to report a claim against Plaintiff's title.  (# 7-5 at p. 1)

On April 30, 2007, Plaintiff filed suit against the Mitchells in Pulaski County Circuit Court ("the State Case"), No. CV 2007-5646, claiming slander of title.[1]  (#7-7 at p. 1)  On June 19, 2008, Plaintiff filed an amended complaint in the State Case adding Stewart Title as a defendant.  (#7-8 at p. 1)  Stewart Title did not receive any notice of Plaintiff's claim, as required by the Title Policy, until Plaintiff served Stewart Title with a summons and amended complaint in the State Case.   (#7-6 at p. 1)

The Mitchells filed a counterclaim against Plaintiff in the State Case alleging mistake of fact and seeking reformation of the deed.  (#7-9)  In a second amended complaint, Plaintiff claimed entitlement to rents the Mitchell's collected on the West 16th Street Property.  (#7-10)  In a third amended complaint, Plaintiff alleged the Mitchells had committed fraud or constructive fraud in selling her a house on a partial lot. (#7-11) Stewart Title moved for summary judgment in the State Case, but before the Court ruled on the motion, Plaintiff non-suited her claim against Stewart Title.  (#8 at p. 3)

---

[1]There was no adverse action related to the property filed against Plaintiff prior to April 30, 2007, when she filed the lawsuit against the Mitchells in state court.

Plaintiff presented testimony and exhibits in support of her claim for slander of title to a jury on April 21 and 22, 2009.  (#7-12)  At the close of Plaintiff's evidence, the Mitchells moved for directed verdict and the trial court granted the motion.  (#7-12)

The Mitchells presented testimony and exhibits in support of their claim for reformation of the deed.  Plaintiff cross-examined all of the Mitchells' witnesses but did not call any witnesses.  (#13-10 at p. 6)   The jury returned a verdict finding that the Mitchells had not proven mutual mistake in the legal description in the deed by clear and convincing evidence.  (#13-10 at p. 6)  Accordingly, the Court entered a judgment denying the Mitchells' claim for reformation of the deed.[2]  (#13-10)

Plaintiff filed the instant lawsuit alleging: (1) Defendant breached its duty under the Title Policy to defend her and to indemnify her for prosecuting the state case; (2) Defendant breached its duty to indemnify her for rent collected by the Mitchells on the West 16th Street Property; and (3) Defendant breached its duty of good faith.  (#2)

Stewart Title has moved for summary judgment (#7) on all of Plaintiff's claims, and Plaintiff has responded to the motion (#13).  Plaintiff has also filed a motion to disqualify Defendant's counsel (#11).  Defendant has responded to that motion (#15).

---

[2]The Mitchells have appealed the trial court's denial of their motion for judgment notwithstanding the verdict to the Arkansas Court of Appeals. *Mitchell v. Fells*, No. CA 09-1193, slip op. April 7, 2010.  Plaintiff has cross-appealed arguing the trial court erred by not entering a judgment on her behalf for rent collected by the Mitchells on the West 16th Street Property. *Id*.  On April 7, 2010, the court ordered rebriefing in the case to correct problems with the record. *Id*.

4

Judge Susan Webber Wright, the presiding district judge in this case, referred Stewart Title's motion for summary judgment (#7) and Plaintiff's motion to disqualify (#11) to this Court, by order of March 26, 2010 (#17).

### III.   **Defendant's Motion for Summary Judgment:**

### A.   **Standard**

Defendant has moved for summary judgment on all of Plaintiff's claims. Summary judgment is appropriate only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008).  To demonstrate a genuine issue of material fact, "[a] plaintiff may not merely point to unsupported self-serving allegations." *Smith*, 523 F.3d at 848 (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)), but rather, the plaintiff "must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor."  *Bass*, 418 at 873.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986).

### B.   **Duty to Defend and Indemnify Plaintiff in the State Case**

Plaintiff claims that in the Title Policy, Stewart Title guaranteed it would insure her "against loss or damage . . . by reason of title to the property being vested other that [sic] as stated in the policy," and it breached that duty by failing to defend and indemnify

her in the State Case.  (#2 at p. 4)  Plaintiff claims Defendant should pay costs, attorneys'

fees, and expenses she incurred in "defense of the title."  (#2 at p. 5)

    (1)    *The Title Policy*

The Title Policy provides that Stewart Title:

> insures . . . against loss or damage . . . sustained or incurred by the insured
> by reason of:
>
> 1. Title to the estate or interest described in Schedule A being vested other
> than as stated therein;
>
> 2. Any defect or lien or encumbrance on the title;
>
> 3. Unmarketability of the title;
>
> 4. Lack of a right of access to and from the land.
>
> The Company will also pay the costs, attorneys' fees and expenses incurred
> in defense of the title, as insured, but only to the extent provided in the
> Conditions and Stipulations.

(#7-3 at p. 2)  Under "EXCLUSIONS FROM COVERAGE," the Title Policy provides:

> The following matters are expressly excluded from coverage of this policy
> and the Company will not pay loss or damage, costs, attorneys' fees or
> expenses which arise by reason of: . . . 3.  Defects, liens, encumbrances,
> adverse claims or other matters . . . (c) resulting in no loss or damage to the
> insured claimant; (d) attaching or created subsequent to Date of Policy.

(#7-3 at p. 2)  Section 4 of the Title Policy provides:

> Upon written request by the insured and subject to the options contained in
> Section 6 . . . the Company, at its own cost and without unreasonable delay,
> shall provide for the defense of an insured in litigation in which any third
> party asserts a claim adverse to the title or interest as insured but only as to
> those stated causes of action alleging a defect, lien or encumbrance or other
> matter insured against by this policy. . . . The Company will not pay any

fees, costs or expenses incurred by the insured in the defense of those
causes of action which allege matters not insured against by this policy.

(#7-3 at p. 3)

Under Arkansas law, it is the function of the court in litigation involving insurance

policies to ascertain the meaning of the policy language and to give effect to the language

in the policy. *Campbell & Co. v. Utica Mut. Ins. Co.*, 36 Ark.App. 143, 147, 820 S.W.2d

284, 286 (1991)(citing *Reynolds v. New York Life Ins. Co.*, 202 Ark. 1013, 154 S.W.2d

817 (1941)). The construction and legal effect of a written contract are to be determined

by the court as a question of law, except where the meaning of the language depends

upon disputed extrinsic evidence. *Id.* (citing *Duvall v. Massachusetts Indem. & Life Ins.

Co.*, 295 Ark. 412, 748 S.W.2d 650 (1988)).

    (2)   *Plaintiff's Slander of Title Claim in the State Case*

In the State Case, Plaintiff brought a slander of title claim against the Mitchells

claiming they disparaged her title by attempting to record a revised deed and by causing

the tenant on the West 16th Street Property to refuse to pay her rent. Slander of title is a

tort action based on malicious publication of false matter that disparages the title to

property. *Fleming v. Cox Law Firm*, 363 Ark. 17, 20, 210 S.W.3d 866, 868 (2005)

(citing *Sinclair Ref. Co. v. Jones*, 188 Ark. 1075, 70 S.W.2d 562 (1934)).

As set out above, the Title Policy insures only against loss or damage sustained

by interest in the property being vested other than as stated in the policy, a defect or lien

or encumbrance on the title, unmarketability of the title, or lack of a right of access to and

7

from the land.  Plaintiff's slander of title claim was a tort claim seeking damages, not a claim to establish title to the property insured by the Title Policy.  The claim does not fall within any of the types of claims covered by the Title Policy.  Accordingly, Defendant was not required to prosecute the claim.

Further, even if the Plaintiff's slander of title claim had fallen within one of the categories of claims covered by the Title Policy, Defendant would have had the right, under the policy, to decide "to prosecute any action . . . which in its opinion may be necessary . . . to establish the title to the estate or interest, as insured, or to prevent or reduce loss or damage to the insured."  (#7-3 at p. 3)  Under the plain language of the Title Policy, Defendant was not obligated to prosecute the slander of title claim, but could have, at its option.

The Title Policy also excludes from coverage adverse claims "resulting in no loss or damage to the insured."  In *Chicago Title Ins. Co. v. Arkansas Riverview Dev., LLC*, No. 4:07cv00554, 2009 WL 1258274 (E.D. Ark. 2009),  the Court considered an insured property owner's motion for summary judgment against the title insurance company for expenses it incurred in litigating and settling a case involving a defect in a title.  Like the policy in this case, the title insurance policy in *Arkansas Riverview* excluded from coverage encumbrances or other matters resulting in no loss or damage to the insured. *Id*. at *1.  The property owner claimed that the "existence of a title defect is *ipso facto* loss" and sought to recover its litigation and settlement expenses from the title company.  *Id*. at

*7.  In response, the title company argued that the policy excluded from coverage matters that resulted in no loss or damage to the title of the policy holder.  *Id*.

The Court held that the case presented a unique situation where there was a genuine issue of material fact as to how much, if any, of the amount the insured property owner spent in litigation and in settlement was to pay for defects in the title against which the title company had insured and how much was to pay for items outside the provisions of the title insurance policy.  *Id*. at *7.  The Court denied summary judgment stating that the property owner had to prove "that the matter that rendered its title unmarketable caused the losses that it claims that it sustained."  *Id*. (citations omitted)

In this case, unlike in *Chicago Title*, Plaintiff has not established a defect in her title to the property causing it to be unmarketable.  In the State Case, the court directed a verdict in favor of the Mitchells on Plaintiff's slander of title claim.  Further, the jury in the State Case returned a verdict in Plaintiff's, favor finding that there was not a mutual mistake with respect to the legal description in the deed.  (#13-10 at p. 1)  Accordingly, the court denied the Mitchells' claim to reform the deed, and Plaintiff retained the property described in the Title Policy.  Given the outcome of the State Case, Plaintiff cannot establish a defect in her title causing it to be unmarketable and, accordingly, cannot claim that she has sustained losses as a result.

Finally, the Title Policy excludes from coverage claims "attaching or created subsequent to Date of Policy."  Plaintiff's slander of title claim is excepted from coverage

9

because the events that gave rise to the claim occurred after the Title Policy was issued on

January 10, 2006.  Plaintiff claims that in January, 2007, a year after the date of the Title

Policy, the Mitchells slandered her title by attempting to change the description on the

original recorded deed.  (#7-7 at p. 2)  Petitioner also claims the Mitchells slandered her

title by collecting rent on the West 16th Street Property after the date of the Title Policy.

All of the events giving rise to Plaintiff's slander of title claim arose after the date of the

Title Policy and, consequently, the claim is excluded from coverage.  See *Mark Twain*

*Kansas City Bank v. Lawyers Title Ins. Corp.*, 807 F.Supp. 85, 87 (E.D. Mo 1992)

(holding that, although the faulty disbursement that gave rise to the claim took place only

fifty-one minutes after the "Date of Policy," the claim was excluded from coverage under

the title insurance policy's provision excluding defects created after the "Date of

Policy").

      (3)     *The Mitchells' Counterclaim to Reform the Deed in the State Case*

      Plaintiff also claims that, under the Title Policy, Defendant was obligated to

defend her against the Mitchells' counterclaim for reformation of the deed in the State

Case.  Plaintiff claims the Mitchells' counterclaim "constituted a claim that title to

Plaintiff's property was vested in [the] Mitchells and not in Plaintiff."  (#13 at p. 6)

Defendant counters that it did not receive timely notice of the claim and, again, that the

claim is excluded from coverage because the Mitchells' claim resulted in no loss or

damage to the claimant.

       a.     Notice

The Title Policy provides:

> The insured *shall* notify the Company promptly in writing (1) in case of
> any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall
> come to an insured hereunder of any claim of title or interest which is
> adverse to the title to the estate or interest, as insured, and which might
> cause loss or damage for which the Company may be liable by virtue of this
> policy, or (iii) if title to the estate or interest, as insured, is rejected as
> unmarketable.

(#7-3 at p. 3) (emphasis added)  Additionally, the Title Policy provides that the insured

shall provide "a proof of loss or damages signed and sworn to by the insured claimant . . .

within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or

damage." (#7-3 at p. 3)  The Title Policy specifies that all notices required to be given in

writing are to be addressed to Defendant in Houston, Texas. (#7-3 at p. 4)  Finally,

Section 4(a) of the Title Policy requires a "written request by the insured" before

Defendant is obligated to defend the insured against a claim adverse to the title or interest

of the insured. (#7-3 at p. 3)

     Plaintiff admits it never provided Defendant with written notice of the Mitchells'

claim or proof of loss. (#13 at p. 5)  Plaintiff claims that STAR, Defendant's agent, had

verbal notice of a problem with the sale of the property and that Defendant was not

prejudiced in any way as a result of her failure to give written notice. (#13 at p. 5)

     Plaintiff has not offered any evidence to support her contention that Darlene

Jones, President of STAR, to whom the Plaintiff's attorney and a family member inquired

about the transaction, is an agent of the Defendant for purposes of receiving notice of a claim.  According to Ms. Jones' affidavit, STAR is "not authorized to receive claims from insured" under its Title Insurance Underwriting Agreement. (#7-5 at p. 1) Additionally, Stephen Reid, Vice-President, Southwest Region Claims Counsel for Stewart Title stated in his affidavit that STAR, "is not appointed by Stewart Title Guaranty Company as its agent for receipt of a notice of claim and/or complaint." (#7-6 at p. 1)

The only testimony Plaintiff offers to controvert the Defendant's affidavits is the affidavit of Greg Allmon, Plaintiff's nephew, who states that he "notified Stewart Title of Arkansas several months before the case in Pulaski Circuit Court was filed that there was a problem with the sale of the property." (#16 at p. 1)  Assuming Mr. Allmon's statement is true, it does not controvert Defendant's affidavit testimony that STAR is not an agent of Stewart Title for purposes of receiving notice of claims.  Defendant did not receive written notice as required by the Title Policy of the Mitchells' counterclaim for reformation of the deed, and, consequently, it was not liable to defend the Plaintiff against the counterclaim.  *Norwood v. Norwood*, CA 83-260, 1984 WL 1841 at *2 (1984)(citing *Green v. Ferguson*, 263 Ark. 601, 567 S.W.2d 89 (1978)) (when parties to a contract express their intention in clear and unambiguous language in a written instrument, it is the court's duty to construe the writing in accordance with the plain meaning of the language).

Plaintiff claims that she is still entitled to recover the attorneys' fees and costs she incurred in the State Case because Defendant was not prejudiced by her failure to provide written notice of the Mitchells' counterclaim.  In support of this argument, Plaintiff points to Section 3 of the Title Policy which provides, "failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice." (#7-3 at p.3)  Similarly, Section 5 of the Title Policy provides, "[i]f the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate." (#7-3 at p. 3)

The purpose of provisions in insurance contracts that require an insured to inform the insurer of suits filed is to afford the insurer the opportunity to defend on the merits of the case.  See *Ramey v. State Farm Mut. Auto. Ins. Co.* 54 Ark.App. 307, 309-310, 924 S.W.2d 835, 836-837 (1996) (citing *M.F.A. Mut. Ins. Co. v. White*, 232 Ark. 28, 334 S.W.2d 686 (1960)) (trial court did not err in granting insurer's motion for a directed verdict).  In this case, the Title Policy provides that when the Defendant is notified in writing of a claim, it "shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel."

Defendant first received notice of the State Case when it was joined as a defendant more than a year after the case was filed and first received notice of the Mitchells' counterclaim more than four months after it was filed.  Defendant was prejudiced by Plaintiff's failure to notify, because it could not exercise its right under the Title Policy to select counsel to defend against the claim.

Additionally, under Section 6 of the Title Policy, if Defendant had been given notice of the claim it would have had the option to "tender payment of the amount of insurance" or to "settle with parties other than the insured or with the insured claimant." (#7-3 at p. 3)  Plaintiff's failure to give Defendant written notice of the Mitchells' counterclaim prejudiced the Defendant because it was unable to properly investigate the claim and exercise its right to settle the claim prior to litigation.

Because Plaintiff failed to give written notice of the Mitchells' counterclaim for reformation of the deed to the Defendant, she can recover only if she is able to prove that Defendant waived the notice requirements.  As a general rule, there can be no waiver of an insured's noncompliance with a notice of claim provision when the insurer does not have knowledge of all the material facts.  *Ramey*, 54 Ark.App. at 309.  In this case, Defendant did not have knowledge of all of the material facts, and there is no evidence to support a claim that Defendant waived compliance with the written notice requirements set forth in the Title Policy.

b.      Loss or Damage to Plaintiff

Even if Plaintiff properly notified Defendant of the Mitchells' claim, her claim is

excluded from coverage under the Title Policy.  In the State Case, Plaintiff testified that

she intended to buy a "full lot" when she agreed to purchase the Wolfe Street Property

from the Mitchells.  The jury found that the Mitchells had not presented sufficient

evidence to find a mistake of fact in order to reform the deed.  The Court entered a

judgment in favor of the Plaintiff and denied the Mitchells claim for reformation of the

deed.  (#13-10)  Accordingly, Plaintiff cannot claim a loss because she continues to have

title to the Property described in the Title Policy, a full lot which encompasses not only

the Wolfe Street Property but also the West 16th Street Property.  See *Cohen v. Security

Title and Guar. Co.*, 212 Conn. 436, 439-440, 562 A.2d 510, 511-12 (1989)(property

owner suffered no loss or damage compensable under title insurance policy when it

received exactly what it bargained for in the real estate transaction); *Aja v. Appleton*, 86

Nev. 639, 643, 472 P.2d 524, 526 (1970) (property owner could not hold title insurer

liable under title policy because it conceded it never intended to purchase an additional

parcel and, accordingly, suffered no loss when the court ordered reformation of the deed

to exclude the parcel).

Plaintiff claims that if the house is on a partial lot, it might not be able to be

rebuilt if destroyed, causing her ownership interest to be unmarketable.  (#13 at p. 6)

This claim fails not only because the judgment in the State Case affirmed her ownership

of a full lot, but also because Plaintiff offers no evidence to support her contention that the house could not be rebuilt if it was destroyed. *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008)(quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 873 (8th Cir. 2005)) (to demonstrate a genuine issue of material fact the plaintiff "must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor").

The Court recommends that the District Court grant Defendant's motion for summary judgment on Plaintiff's claim that Defendant breached its duty to defend and indemnify her in the State Case.

### C.    Breach of Duty to Indemnify for Rents Collected by the Mitchells

Plaintiff claims she incurred damage because after the Title Policy was issued and before judgment was entered in the State Case, the Mitchells collected $15,000.00 in rent on the West 16th Street Property.  Plaintiff presented this claim for damages in the State Case and has appealed the State Court's denial of damages to the Arkansas Court of Appeals.  Title insurance is "not prospective in its operation and has no relation to liens or requirements arising thereafter . . . .  Title insurance, instead of protecting the insured against matters that may arise during a stated period after the issuance of the policy is designed to save him harmless from any loss through defects, liens, or encumbrances that may affect or burden his title when he takes it." *National Mortgage Corp. v. American Title Ins.*, 299 N.C. 369, 375, 261 S.E.2d 844, 848-49 (1980).  As explained above, the

16

events giving rise to Plaintiff's claim to rents collected by the Mitchells arose after the Title Policy was issued.  Accordingly, the claim is excluded from coverage under the Title Policy.

The Court recommends that the District Court grant Defendant's motion for summary judgment on Plaintiff's claim that Defendant breached its duty to indemnify her for rent collected on the West 16th Street Property.

### D.     Breach of Duty of Good Faith

Plaintiff claims that Defendant breached the "implied covenant of good faith and fair dealing" by failing to defend her against the Mitchells' claim, failing to pay the cost of defense, refusing to make any attempt to settle her claim against the Mitchells, "attempting to assist" the Mitchells in the State Case, failing to "acknowledge the claim," failing to "investigate the claim," and not explaining its actions to her.  (#13 at p. 7) Plaintiff seeks three million dollars in punitive damages.  (#13 at p. 8)

In order to state a claim for bad faith, a claimant must allege that the defendant insurance company engaged in affirmative misconduct that was dishonest, malicious, or oppressive.  *Unum Life Ins. Co. of America v. Edwards*, 362 Ark. 624, 628, 210 S.W.3d 84, 88 (2005) (citing *State Auto Prop. & Cas. Ins. Co. v. Swaim*, 338 Ark. 49, 991 S.W.2d 555 (1999); *Aetna Cas. & Sur. Co. v. Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1983)).  The Arkansas Supreme Court has defined "bad faith" as "dishonest,

malicious, or oppressive conduct carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge." *Id*.

Nothing in the record indicates that Defendant has acted in bad faith. Plaintiff did not give Defendant written notice of her slander of title claim or of the Mitchells' counterclaim against her for reformation of the deed, as required by the plain language of the Title Policy, until she made Stewart Title a defendant in the State Case. Plaintiff's complaint in the State Case alleged slander of title, which the Defendant appropriately concluded was excluded from coverage under the Title Policy. *Lawyers Title Ins. Corp. v. Research Loan & Inv. Corp.*, 361 F.2d 764, 768 (Mo. 1966) (parties to a title insurance policy are free to define what losses or encumbrances they intend to cover under the policy and courts lack authority to re-write such contracts). After becoming a defendant in the State Case, Stewart Title learned that Plaintiff claimed to own a "full lot." Defendant appropriately concluded that, under these facts, it had no duty to defend Plaintiff because the Property described in the warranty deed conveyed a full lot. See *Unum*, 362 Ark. at 628 (mistake on an insurance carrier's part or negligence or confusion or bad judgment will not suffice to substantiate the tort of bad faith). Plaintiff has not alleged facts to support its claim that Defendant breached its duty of good faith.

Plaintiff claims that Defendant provided "aid, assistance and possibly financial help to Mitchells" in the State Case. (#2 at p.5) The only evidentiary support Plaintiff provides for her claim is the affidavit of her nephew who states he was present at the trial

in the State Case and observed Defendant's attorney "sitting immediately behind Mitchells and their attorney offering advice and council [sic] throughout the trial." (#16) Assuming the testimony is true, it falls short of establishing any dishonest, malicious, or oppressive conduct on the part of the Defendant aimed at avoiding its liability under the Title Policy.

The Court recommends that the District Court grant Defendant's motion for summary judgment on Plaintiff's claim of bad faith.

**IV.**     **Plaintiff's Motion to Disqualify Counsel**:

Plaintiff filed a motion to disqualify Defendant's counsel claiming that counsel and her law firm should be disqualified because they are likely to be witnesses at trial. (#11 at p. 1)  Because the Court recommends that the District Court grant Defendant's motion for summary judgment on all of Plaintiff's claims, it recommends dismissing Plaintiff's motion to disqualify Defendant's counsel as moot.

**V.**     **Conclusion**:

The Court recommends that the District Court grant Defendant's Motion for Summary Judgment (#7) as to all of Plaintiff's claims and deny Plaintiff's Motion to Disqualify Counsel (#11) as moot.

DATED this 23rd day of April, 2010.

_____
UNITED STATES MAGISTRATE JUDGE